O

JS-6

# United States District Court
# Central District of California

| | |
|---|---|
| DIVISION OF LABOR STANDARDS ENFORCEMENT,<br><br>   Plaintiff,<br><br>   v.<br><br>SAVE MART SUPERMARKETS, et al.,<br><br>   Defendants. | Case № 2:21-cv-07402-ODW (Ex)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [15] AND DENYING AS MOOT DEFENDANTS' MOTION TO DISMISS OR COMPEL ARBITRATION [13]** |

## I. INTRODUCTION

Plaintiff Division of Labor Standards Enforcement filed this action in state court against Defendants Save Mart Supermarkets and The Save Mart Companies, Inc. (collectively, "Save Mart"). (Notice of Removal ("NOR"), Ex. 1 ("Compl."), ECF No. 1-1.) On September 15, 2021, Save Mart removed this action to federal court pursuant to 28 U.S.C. §§ 1331 and 1441. (NOR ¶ 8, ECF No. 1.)

Now, two motions are pending. First, Plaintiff moves to remand the action for lack of subject matter jurisdiction. (Mot. Remand ("MR"), ECF No. 15.) The Motion to Remand is fully briefed. (Opp'n MR, ECF No. 18; Reply MR, ECF No. 19.) Second, Save Mart moves to dismiss or compel arbitration. (Mot. Dismiss Compel ("MDC"), ECF No. 13-1.) The Motion to Dismiss or Compel Arbitration is also fully briefed.

(Opp'n MDC, ECF No. 17; Reply MDC, ECF No. 20.) For the reasons that follow, Plaintiff's Motion to Remand is **GRANTED**, and Save Mart's Motion to Dismiss or Compel Arbitration is **DENIED AS MOOT**.[1]

## II.  BACKGROUND

The Division of Labor Standards Enforcement (the "Division") is a state agency authorized to enforce the California Labor Code. (Compl. ¶ 1.) Save Mart is a California corporation doing business in California. (*Id.* ¶¶ 2–3.)

The Division alleges that from July 1, 2015, to February 26, 2021, Save Mart failed to provide paid sick days for the first day of a covered absence for its employees in Kern County and Santa Barbara County ("Save Mart Employees"). (*Id.* ¶¶ 9, 11.) The Division now seeks statutory remedies under the California Labor Code for Save Mart's failure to provide paid sick days. (*Id.* ¶¶ 10–19.)

## III.  LEGAL STANDARD

As discussed below, the Court grants the Division's Motion to Remand without reaching Save Mart's Motion to Dismiss or Compel Arbitration. The applicable standards for removal and remand are as follows.

The right to remove a case to federal court is entirely a creature of statute. *See Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979). The federal removal statute allows defendants to remove a case originally filed in state court when it presents a federal question. *See* 28 U.S.C. §§ 1331, 1441(a). A case presents a "federal question" if a claim "aris[es] under the Constitution, laws, or treaties of the United States." *Sullivan v. First Affiliated Sec., Inc.*, 813 F.2d 1368, 1371 (9th Cir. 1987) (quoting 28 U.S.C. § 1331).

Whether removal jurisdiction exists must be determined by reference to the "well-pleaded complaint." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986). The well-pleaded complaint rule makes plaintiff the "master of the claim."

---

[1] After carefully considering the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

*Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Thus, where the plaintiff can state claims under both federal and state law, he can prevent removal by ignoring the federal claim and alleging only state law claims. *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 344 (9th Cir. 1996).

The artful pleading doctrine is an exception to the well-pleaded complaint rule. Under the artful pleading doctrine, a plaintiff cannot defeat removal of a federal claim by disguising or pleading it artfully as a state law cause of action. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n.2 (1981). If the claim arises under federal law, the federal court will re-characterize it as a federal claim and will decline to remand. *Id.* As is particularly applicable here, when a state claim is completely preempted by federal law, the artful pleading doctrine applies, a federal question exists, and the Court has original jurisdiction. *See Caterpillar*, 482 U.S. at 393 ("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.").

The removing party bears the burden to establish that federal subject matter jurisdiction exists. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988).

### IV.   REQUEST FOR JUDICIAL NOTICE

The Court first considers Save Mart's Request for Judicial Notice. (Req. Judicial Notice ("RJN"), ECF No. 14). Save Mart asks the Court to take judicial notice of two collective bargaining agreements and related side agreements (collectively, "CBAs"). (*See* RJN Ex. A ("Food Maxx CBA"), ECF No. 14-1; RJN Ex. B ("Food Maxx MOA"), ECF No. 14-2; RJN Ex. C ("Save Mart CBA"), ECF Nos. 14-3, 14-4; RJN Ex. D ("Save Mart MOA"), ECF No. 14-5.) The parties agree that during the relevant time period, Save Mart's employees in Kern County and Santa Barbara County worked for Save Mart under these CBAs. (NOR ¶ 4; MDC 9.)

Save Mart refers to the CBAs to argue that the CBAs, and not state law, govern the Division's claims. (*See* MDC 7–8.) Thus, Save Mart argues, section 301 of the

Labor Management Relations Act ("LMRA"), which provides federal jurisdiction of "[s]uits for violation of contracts between an employer and a labor organization," 29 U.S.C. § 185, completely preempts the Division's state law causes of action. (*Id.*)

Save Mart originally filed its RJN in connection with its own Motion to Dismiss or Compel Arbitration, and it later cited to its RJN in its Opposition to the Division's Motion to Remand. (*See, e.g.*, Opp'n MR 2.) Although opposing a motion by referring to materials from an altogether different motion is procedurally irregular, the parties do not dispute that the CBAs are true and correct copies of applicable and relevant agreements. Moreover, "a federal court may look beyond the face of the complaint to determine whether the claims alleged as state law causes of action in fact are necessarily federal claims." *Parrino v. FHP, Inc.*, 146 F.3d 699, 704 (9th Cir. 1998). Thus, it is appropriate for the Court to consider the CBAs, either by way of judicial notice or as evidence. *See Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1192–93 (C.D. Cal. 2015) (recognizing that a court ruling on motions to dismiss or remand may permissibly look to collective bargaining agreements that form the basis of complete preemption arguments).

Save Mart also asks the Court to take judicial notice of two formal grievances filed against Save Mart for violation of the CBAs. (*See* RJN.) The Court does not find it necessary to rely on these documents to resolve the present Motions and accordingly declines to take judicial notice of them.

## V. DISCUSSION

The Court first considers the Division's Motion to Remand, as it goes to the threshold question of subject matter jurisdiction.

### A. Motion to Remand

In its Motion to Remand, the Division argues that because it is bringing only state law claims, the Court does not have federal question jurisdiction under 28 U.S.C. § 1331. (*See* MR 8–10.) In response, Save Mart contends that the Division's claims

are completely preempted by section 301 of the LMRA and thus raise a federal question. (*See* Opp'n MR 11–15.)

Claims under the LMRA are one of "only three areas . . . deemed areas of complete preemption by the United States Supreme Court." *Gatton v. T–Mobile USA, Inc.*, No. 03-CV-00130-DOC, 2003 WL 21530185, at *5 (C.D. Cal. Apr. 18, 2003) (citations omitted); *see also Robinson v. Mich. Consol. Gas Co.*, 918 F.2d 579, 585 (6th Cir. 1990). In *Burnside v. Kiewit Pac. Corp.*, the Ninth Circuit held that the LMRA preempts a state law cause of action if (1) the cause of action is founded directly on a right created by a collective bargaining agreement or (2) the right sued upon exists independently of any collective bargaining agreement but is nevertheless substantially dependent on analysis of a collective bargaining agreement. 491 F.3d 1053, 1059 (9th Cir. 2007); *McCray v. Marriott Hotel Servs., Inc.*, 902 F.3d 1005, 1009–10 (9th Cir. 2018) (noting this distinction "doesn't lend itself to analytical precision" (cleaned up)).

Here, as discussed in detail below, the Save Mart Employees' right to paid sick days on which the Division sues exists independently from the CBAs and does not substantially depend on an analysis of the CBAs. Accordingly, the LMRA does not preempt the Division's causes of action. The claims are pure state-law claims, and the Court lacks federal question jurisdiction.

    *1.*    *The Right to Use Accrued Sick Days Arises from the California Labor Code, Not the CBAs.*

The Division's three causes of action are based on the fundamental allegation that Save Mart failed to provide its employees with paid sick days on the first day of a covered absence. (Notice of Removal Ex. 1 ("Compl.") ¶ 9, ECF No. 1-1.) The Division alleges this practice violated California Labor Code section 246.5(a), which requires an employer to provide paid sick days (1) for the "[d]iagnosis, care, or treatment of an existing health condition of, or preventative care for, an employee or an employee's family member," or (2) for "an employee who is a victim of domestic

violence, sexual assault, or stalking." Cal. Lab. Code § 246.5(a). The Division asserts three causes of action: a claim arising directly from section 246.5(a), and two derivative claims seeking additional penalties flowing from the section 246.5(a) violation. (Compl. ¶¶ 10–19.) Therefore, on their face, the Division's claims arise from rights found in the California Labor Code, not the CBAs.

Save Mart nevertheless argues that, by operation of California Labor Code section 245.5(a)(1), section 246.5(a) does not apply to the present action, leaving the CBAs as the documents governing the Save Mart Employees' right to sick time and the Division's corresponding claims. (Opp'n MR 11–14.) Labor Code section 245.5(a)(1) functions as an "opt-out mechanism" that allows employers and employees to opt out of the requirements of section 246.5(a) by agreeing to certain heightened employment standards in their collective bargaining agreement. *McCray*, 902 F.3d at 1011. Specifically, section 245.5(a)(1) states that section 246.5(a)'s sick day requirements do not apply to:

> [a]n employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of employees, and expressly provides for paid sick days or a paid leave or paid time off policy that permits the use of sick days for those employees, final and binding arbitration of disputes concerning the application of its paid sick days provisions, premium wage rates for all overtime hours worked, and regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate.

Cal. Lab. Code § 245.5(a)(1). Save Mart asserts that, because the CBAs satisfy the requirements of section 245.5(a)(1), section 246.5(a) does not apply, the CBAs govern Save Mart Employees' sick leave, and the Division's cause of action for sick leave violations therefore arises solely from the CBAs. (Opp'n MR 11–14.)

Save Mart's argument does not demonstrate preemption under the first prong of the *Burnside* test. Even if the CBAs satisfied the requirements of section 245.5(a)(1), thus invalidating the Division's claim for penalties under the Labor Code, that would not mean that the Division's claims would be to enforce a right in the CBAs; it would

simply mean that the Division had California Labor Code claims which a different portion of the California Labor Code prevented it from pursuing. *Cf. McCray*, 902 F.3d at 1010–11 ("[W]e reject[] the . . . argument that the fact that a right could theoretically be waived meant that the right necessarily depended on a CBA.")

After all, it is Save Mart, not the Division, who introduces the CBAs into the argument, and a corollary of the well-pleaded complaint rule is that a defendant cannot inject a federal question into a state-law claim and transform the action into one arising under federal law. *See Wilson-Davis v. SSP Am., Inc.*, 434 F. Supp. 3d 806, 812 (C.D. Cal. 2020). The Labor Code section 245.5(a)(1) opt-out mechanism is in the character of an affirmative defense, and merely raising it does not fundamentally change the character of the Save Mart Employees' right to sick days by converting a right that was originally based on the California Labor Code to a right instead based on the CBAs. *See McCray*, 902 F.3d at 1011 ("That the ordinance contains an opt-out mechanism doesn't change the fact that these rights originate outside of the CBA.").

For these reasons, Save Mart fails to persuade the Court that the Division's cause of action is founded directly on rights created by a collective bargaining agreement and thus fails to show that the Division's claims are preempted under prong one of the *Burnside* test.

  2.   *The Right to Paid Sick Days Does Not Depend Substantially on Interpretation of the CBAs*

Under the second prong of the *Burnside* test, the LMRA preempts state law causes of action that substantially depend on analysis of a collective bargaining agreement. *Burnside*, 491 F.3d at 1059. Preemption occurs if a court needs to "interpret" the terms of a collective bargaining agreement but does not occur if a court need only "consider," "refer to," "look to," or "apply" those terms. *McCray*, 902 F.3d at 1011. Here, the ways the parties foresee using the CBAs will require them to do no more than refer or look to the CBAs' terms.

Save Mart argues that, in order to determine whether the above-discussed section 245.5(a)(1) exemption/opt-out mechanism applies, the Court will need to determine the Save Mart Employees' regular rate of pay, which in turn will require the Court to interpret the applicable CBAs. (Opp'n MR 10–12.) Save Mart relies on *Firestone v. S. Cal. Gas Co.*, 219 F.3d 1063, 1067 (9th Cir. 2000), for the proposal that determining the regular hourly rate of pay requires interpreting a collective bargaining agreement. The facts of *Firestone*, however, are inapposite. In *Firestone*, the plaintiffs, who were employed as meter readers for a gas company, alleged that they were not paid a "premium rate" for overtime as defined in California Labor Code section 514. 219 F.3d at 1066. To determine whether the plaintiffs were paid a premium rate for overtime, the court had to first determine plaintiffs' regular hourly rate of pay. *Id.* The employer's compensation scheme was not straightforward, however, and the parties disputed the regular hourly rate of pay. *Id.* The employees argued that the governing collective bargaining agreement established a regular rate of $16.56 per hour. *Id.* The gas company argued that because the employees were compensated at a flat sum per route, computed by multiplying $16.56 by the *estimated* number of hours it would take to complete the route, the regular hourly rate of pay was not $16.56 per hour, but rather the flat sum divided by the number of *actual* hours it took to complete the route. *Id.* Resolution of this dispute required an interpretation of the terms of the applicable collective bargaining agreement. *Id.* at 1065–66.

The CBAs in the present case, by contrast, provide a table of wage rates from which a court can readily determine in a clear and straightforward manner the Save Mart Employees' regular hourly rates of pay. (Food Maxx MOA 10; Save Mart MOA 7.) No one disputes what these tables indicate or mean. The Court does not need to analyze or interpret the tables, or any other part of the CBAs, to determine whether Save Mart paid a regular hourly rate of pay not less than 30 percent more than state minimum wage. Cal. Lab. Code § 245.5(a)(1); *see Wilson-Davis*, 434 F. Supp. 3d at 813 (finding no preemption when there was "no indication that the Court would have

to look at anything other than Schedule A of the CBA or the employees' pay stubs to determine whether Defendants paid their employees at least the minimum wage set under California law"). Instead, a court can simply "refer to" or "look to" the Save Mart Employees' wage tables and compare the values in those wage tables to 130% of California minimum wage. *McCray*, 902 F.3d at 1011.

Save Mart nevertheless argues that the table of wage rates are augmented by several other terms in the CBAs, which increase pay rates for hours worked on Sundays, evenings, and holidays, and that these additional terms need to be interpreted. (Opp'n MR 17–19.) A two-part analysis reveals that Save-Mart's argument is ultimately unavailing. *First*, in determining whether the section 245.5(a)(1) exemption applies, the relevant question is whether *all* employees covered by the relevant collective bargaining agreement have a regular rate of pay of at least 130% of minimum wage. That being the case, a court would look to the regular rates of pay of only the lowest-paid employees under the CBAs (because if those employees' regular rate of pay is at least 130% of minimum wage, then so is the regular rate of pay of all covered employees). *Second*, proceeding from this premise, the lowest-paid employees are ones who do not work Sundays, evenings, and holidays, and accordingly, the Court need not interpret any terms in the CBAs related to Sundays, weekends, and holidays.

The Court explores each of these points in further detail.

> a. *Labor Code section 245.5(a)(1)'s 30%-more-than-minimum-wage requirement applies to all employees covered by the relevant collective bargaining agreement.*

First, the requirement that the regular rate of pay be at least 30% more than minimum wage applies to all employees covered by the relevant collective bargaining agreement. In other words, if the regular rate of pay of <u>any</u> employee under the relevant collective bargaining agreement is less than 130% of state minimum wage, then the section 245.5(a)(1) exemption fails as to *all* employees covered by that collective bargaining agreement. Save Mart argues that this interpretation is erroneous, and

instead, that the section 245.5(a)(1) exemption applies so long as the individual employee has a regular rate of pay greater than 130% of minimum wage, even if other employees covered by the same collective bargaining agreement do not. (Opp'n MR 6–8.)

The Court declines to adopt Save Mart's interpretation of section 245.5(a)(1). Although section 245.5(a)(1) speaks of whether certain provisions of the California Labor Code apply to "[a]n employee," the exception requires that the employee be covered by a valid collective bargaining agreement that provides for certain working conditions for "employees" in the plural and provides paid sick leave for "those employees." The implication from section 245.5(a)(1)'s use of the "those employees" in describing the parameters for sick leave in a collective bargaining agreement is that the agreement must also meet the other relevant parameters, including an enhanced regular rate of pay, with respect to "those employees," not to the single employee mentioned only near the beginning of the sentence.

Case law interpreting an analogous Labor Code section supports this conclusion. Namely, California Labor Code section 514 provides an exception to California's overtime pay requirements utilizing language nearly identical to section 245.5(a)(1). It provides that Labor Code sections 510 and 511, which are overtime provisions,

> do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.

Cal. Lab. Code § 514. Multiple courts have interpreted the use of the words "employees" and "those employees" as requiring a collective bargaining agreement to satisfy section 514's substantive requirements "with respect to all covered employees." *Huffman v. Pac. Gateway Concessions LLC*, No. 19-CV-01791-PJH, 2019 WL 2563133, at *6 (N.D. Cal. June 21, 2019) ("Section 514 concerns the merits of the

agreement itself, not its treatment of any individual employee."); *see also Rooney v. Save Mart Supermarkets*, No. 2:20-CV-00671-JAM (FEBx), 2020 WL 3819481, at *3 (E.D. Cal. July 8, 2020) (adopting *Huffman*'s interpretation of section 514); *Sarmiento v. Sealy, Inc.*, No. 18-CV-01990-JST, 2019 WL 3059932, at *9 (N.D. Cal. July 12, 2019) (concluding that whether a collective bargaining agreement provides a sufficient regular hourly rate of pay under section 514 "must be determined by reference to all of the covered employees"). The reasoning of these cases supports the conclusion that the section 245.5(a)(1) exemption, like the section 514 exemption, requires a collective bargaining agreement that provides for the enhanced regular rate of pay for all covered employees.[2]

> *b. The proper interpretation of section 245.5(a) obviates the need to look to the Sunday, evening, and holiday pay provisions in the CBAs.*

The foregoing distinction is important because correctly interpreting section 245.5(a)(1)'s enhanced regular rate of pay requirement significantly simplifies determining whether that requirement is met. Under the correct interpretation of section 245.5(a)(1), if *any* employee covered by a collective bargaining agreement has a regular rate of pay of less than 130% of minimum wage, then that collective bargaining agreement categorically does not qualify for the section 245.5(a)(1) exemption. To make that determination in this case, the Court will look to the regular rate of pay of the lowest-paid employees under the CBAs. In this case, the lowest paid Save Mart Employees would be those with the lowest wages who did not work nights

---

[2] Save Mart cites some cases concluding that the relevant collective bargaining agreements satisfied the requirements of the section 514 exemption by referring to the hourly rate of pay of the individual plaintiff employee only, rather than that of every employee covered by the collective bargaining agreement. (Opp'n MR 18.) However, the parties in those cases did not dispute the meaning of section 514's regular rate of pay requirement, and there were no indications that any employee covered under the agreements were paid at a rate less than 130 percent of the minimum wage rate. *See Partida v. Stater Bros. Mkts.*, No. 5:18-CV-02600-SJO (KKx), 2019 WL 1601387, at *5 (C.D. Cal. Feb. 19, 2019); *Sulu v. Coca Cola Enter. Inc*, No. 2:11-CV-08385-SVW (VBKx), 2011 WL 13112254, at *3 (C.D. Cal. Dec. 22, 2011). As such, the cases only provide a cursory discussion of section 514's regular rate of pay requirement and are largely irrelevant.

and weekends. Determining their regular rate of pay would be a simple matter of referring to the wage tables in the CBAs.

This observation neutralizes Save Mart's argument that the wage table is augmented by other terms in the CBAs relating to pay rates for hours worked on Sundays, on holidays, or in the evening, and that these additional terms need to be interpreted. (Opp'n MR 17–19.) The Court need not look to the terms in the CBAs relating to Sundays, holidays, and evenings in determining the regular rate of pay for the lowest paid employees who do not work Sundays, holidays, and evenings.

Save Mart additionally argues that resolution of the Division's claims would require interpretation of the CBAs' sick leave provisions. (Opp'n MR 19–21.) Save Mart points to several terms in the CBAs detailing sick day accrual rates, accrual caps, amount of payout, and conditions required for taking sick days. (*Id.*) The Division does not allege, however, that Save Mart Employees accrued sick days at a rate less than that specified in the CBAs, that their sick days were capped at a number different from that set in the CBAs, that their sick days were not paid out in the amount required by the CBAs, or that they were denied paid sick days even after satisfying the conditions imposed by the CBAs. Instead, the Division alleges that Save Mart violated California Labor Code section 246.5(a) by not paying an employee for the first day off when the employee took sick leave either (1) for the "[d]iagnosis, care, or treatment of an existing health condition of, or preventative care for, an employee or an employee's family member," or (2) for "an employee who is a victim of domestic violence, sexual assault, or stalking." Cal. Lab. Code § 246.5(a). Making this determination does not require interpretation of any of the sick day provisions in the CBAs.

The asserted right to paid sick days does not depend substantially on interpretation of the CBAs, and therefore the LMRA does not preempt the action on this basis.

Without LMRA preemption, there is no federal question. Save Mart fails in its burden of demonstrating the Court's subject matter jurisdiction to hear the case. Accordingly, the Division's Motion to Remand is **GRANTED**.

### 3. Attorney's Fees

In its Motion to Remand, the Division asks the Court to award it attorneys' fees. (MR 15–16.) "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). Although the Court concludes that removal was improper, Save Mart nevertheless had an objectively reasonable basis for asserting LMRA preemption based on the facts of this case and an interpretation of California Labor Code section 245.5(a)(1) that has not been refuted by authority binding upon this Court. Accordingly, the Court declines to grant the Division an award of attorney's fees.

## B. Motion to Dismiss or Compel Arbitration

In light of the foregoing, Save Mart's Motion to Dismiss or Compel Arbitration is moot. As this case does not raise a federal question, the Court lacks subject matter jurisdiction, including jurisdiction to compel arbitration or dismiss a claim. Accordingly, Save Mart's Motion to Dismiss or Compel Arbitration is **DENIED AS MOOT**.

///
///
///
///
///
///
///
///
///

## VI. CONCLUSION

For the reasons discussed above, Plaintiff's Motion to Remand is **GRANTED**. (ECF No. 15.) The case is **REMANDED** to the Superior Court of California, County of Santa Barbara, 312-C East Cook Street, Santa Maria, CA, 93454, as Case No. 21CV03151. Defendants' Motion to Dismiss or Compel Arbitration is **DENIED AS MOOT**. (ECF No. 13.) The Clerk of the Court shall close the case.

**IT IS SO ORDERED.**

March 21, 2022

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**